```
               IN THE UNITED STATES DISTRICT COURT
             FOR THE EASTERN DISTRICT OF PENNSYLVANIA
```

ANTHONY PHILLIPS,                    :    CIVIL ACTION
                                     :    NO. 16-0986
        Plaintiff,                   :
                                     :
    v.                               :
                                     :
SEPTA,                               :
                                     :
        Defendant.                   :


M E M O R A N D U M

EDUARDO C. ROBRENO, J.                             February 12, 2018

Plaintiff alleges racial and national origin discrimination and retaliation in violation of Title VII and the PHRA against SEPTA, his former employer. SEPTA has moved for summary judgment on all claims. For the reasons discussed below, the Court will **GRANT** SEPTA's motion for summary judgment as to all counts.

I.   **FACTUAL BACKGROUND**[1]

Plaintiff Anthony Phillip[2] brings this action against his employer Southeastern Pennsylvania Transportation Authority

---

[1] The facts are presented in the light most favorable to Plaintiff, the non-moving party.

[2] Although the Complaint (ECF No. 1) states that Plaintiff's last name is "Phillips," Plaintiff testified at his

("SEPTA") for discrimination and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq., and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Cons. Stat. § 951 et seq.

Phillip was born in Trinidad and identifies himself as Caribbean and black. Compl. ¶ 9, ECF No. 1. He was hired by SEPTA on or about November 5, 2007, as a Track General Laborer and currently works for SEPTA as an Elevator & Escalator Specialist. Id. ¶ 8.

Phillip asserts that his co-worker at SEPTA, Fred Sutton, "subject[ed] Plaintiff to continuous harassment and [a] hostile work environment because of his national origin." Id. ¶¶ 10, 13, 15, 16. Phillip alleges several comments made by Sutton between 2010 and 2014. Id. Specifically, Sutton stated, "You foreigners come to America, and take away good American jobs," on one occasion, and other another occasion stated, "[F]oreigners come here, get welfare, and take money from the government." Id. ¶¶ 10, 11; see also Pl. Dep. 70 ¶¶ 12-19, 86 ¶¶ 8-19. As to both of these instances, Phillip complained to Director Rodney Martinez. Compl. ¶¶ 11-12, 14. Martinez met with Sutton about these comments and directed him not to make similar comments in the future but no disciplinary action was taken. Id.

---

deposition that his last name is actually "Phillip." See Pl. Dep. 10, ¶¶ 12-16, ECF No. 18-4.

¶¶ 12, 14. Still later, Sutton called Phillip an "asshole" and told him that he "was a no-body where Plaintiff came from, and Plaintiff wants to come to America to be somebody." Id. ¶¶ 15, 16; see also Pl. Dep. 86 ¶¶ 8-19.[3]

In addition, Phillip alleges that in March 2014, "someone put toilet paper[] on his 'jaw-box,' suggesting that Phillip was 'shit.'" Compl. ¶ 17. Phillip again reported this incident, this time to Michael Nesmitt, a backfill foreperson, who in turn reported it to Assistant Director Jesse Fleck and Foreperson Ed Nazerio. Id. Again, Phillip alleges, SEPTA did not take disciplinary action against Sutton. Id. Phillip argues that this constituted a hostile work environment.

Phillip next alleges that in April 2014, SEPTA declined to promote him to a back fill foreperson position, selecting "American-born co-workers" instead. Id. ¶ 18. Phillip also alleges that SEPTA denied him another promotion to the position of Maintenance Manager in May 2014. Id. ¶ 19. According to Phillip, SEPTA selected Matt Treuger, a Caucasian, for the position, even though Phillip was "highly qualified" and "more qualified than Mr. Treuger." Id. ¶¶ 19, 25; see also Pl. Dep. 183 ¶¶ 20-25, 184 ¶¶ 1-17. Phillip alleges that Treuger had not gone through the Elevator & Escalator Specialist Apprentice

---

[3] Phillip also claims that another co-worker, William Hannigan, told Plaintiff to go back to his country. Pl. Dep. 87 ¶¶ 10-25, 89 ¶¶ 1-12.

3

Program, while Phillip had. Compl. ¶ 21. In addition, according to Phillip, Treuger was not eligible for promotion at the time he applied for the Maintenance Manager position because he had not yet worked at SEPTA for six months, as required by SEPTA's promotion policy. Id. ¶¶ 22-23. Based on these facts, Phillip claims SEPTA discriminated against him on account of his national origin and race by denying him promotion to a "backfill" foreperson position (a temporary position wherein an employee fills in for an absent foreperson) and to a maintenance manager position. Id. ¶¶ 29, 35.

Finally, Phillip alleges that SEPTA subjected him to adverse, retaliatory treatment by denying him the backfill opportunity and maintenance manager positions, because he "engaged in protected activities" by complaining to SEPTA about his co-workers' conduct. See id. ¶¶ 32, 38.

## II. PROCEDURAL HISTORY

Phillip claims that as a result of SEPTA's "discriminatory" and "retaliatory" practices, he suffered loss of wages and earnings, loss of benefits, loss of future earning power, loss of back and front pay, mental anguish, emotional distress, humiliation, and damage to reputation. Id. ¶¶ 30, 33, 36, 39. He seeks damages in excess of one hundred thousand dollars.

Phillip filed his Complaint, together with a demand for jury trial, on March 2, 2016. ECF No. 1. Prior to filing the Complaint, Plaintiff filed charges against SEPTA with the Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Relations Commission ("PHRC"). Id. ¶ 5. On December 11, 2015, the EEOC issued Phillip a right to sue letter. Id. at 12. Plaintiff timely filed the Complaint within the 90-day statutory period set forth in the letter. Id. SEPTA filed an Answer on June 28, 2016. ECF No. 3.

After an unsuccessful settlement conference, the resolution of several motions to compel, and the completion of discovery (including Phillip's deposition), SEPTA filed the instant Motion for Summary Judgment, ECF No. 18, and Phillip filed a response, ECF No. 21.

**III. LEGAL STANDARD**

Summary judgment is awarded under Federal Rule of Civil Procedure 56 when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Liberty Mut. Ins. Co. v. Sweeney, 689 F.3d 288, 292 (3d Cir. 2012). "A motion for summary judgment will not be defeated by 'the mere existence' of some disputed facts, but will be denied when there is a genuine issue of material fact." Am. Eagle Outfitters v. Lyle & Scott Ltd.,

584 F.3d 575, 581 (3d Cir. 2009) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)). A fact is "material" if proof of its existence or non-existence might affect the outcome of the litigation, and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

In undertaking this analysis, the court views all facts in the light most favorable to the non-moving party. "After making all reasonable inferences in the nonmoving party's favor, there is a genuine issue of material fact if a reasonable jury could find for the nonmoving party." Pignataro v. Port Auth. of N.Y. & N.J., 593 F.3d 265, 268 (3d Cir. 2010) (citing Reliance Ins. Co. v. Moessner, 121 F.3d 895, 900 (3d Cir. 1997)). While the moving party bears the initial burden of showing the absence of a genuine issue of material fact, meeting this obligation shifts the burden to the non-moving party, who must "set forth specific facts showing there is a genuine issue for trial." Anderson, 477 U.S. at 250.

**IV. DISCUSSION**

Plaintiff Anthony Phillip brings racial and national origin discrimination claims under Title VII and the PHRA, as well as retaliation claims under both statutes. The same legal standards apply to Title VII and PHRA claims. Connelly v. Lane

6

Constr. Corp., 809 F.3d 780, 791 n.8 (3d Cir. 2016) (citing Goosby v. Johnson & Johnson Med., Inc., 228 F.3d 313, 317 n.3 (3d Cir. 2000)). Further, the same standards apply to claims under Title VII and the PHRA on a summary judgment motion. Jones v. Sch. Dist. of Phila., 198 F.3d 403, 410 (3d Cir. 1999). Accordingly, the Court's analysis of the Title VII claims also applies to the PHRA claims.

    A.    Discrimination

In his Complaint, Phillip set forth three factual bases for his discrimination claim: (1) failure to promote to backfill foreperson in 2014; (2) failure to promote to the maintenance manager position; and (3) hostile work environment. Additionally, Phillip attempts to lay out a fourth factual basis for his discrimination claims in his response to SEPTA's motion for summary judgment: failure to promote to backfill foreperson in 2013.

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his [or her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). The PHRA makes it unlawful "[f]or any employer because of the race,

7

color, religious creed, ancestry, age, sex, national origin or non-job related handicap or disability . . . to discharge from employment ... or to otherwise discriminate against such individual." 43 Pa. Stat. Ann. § 955(a).

Phillip's claims are subject to the three-step burden-shifting inquiry under McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973). See, e.g., Flores v. Danberg, No. 15-2026, 2017 WL 3638205, at *3 (3d Cir. Aug. 24, 2017). To satisfy the first step of the McDonnell Douglas inquiry, Phillip must establish a prima facie case of discrimination in SEPTA's decision not to promote him. To do so, he must show that: (a) he was a member of a protected class; (b) he was qualified for the position to which he applied; (c) he suffered some form of adverse employment action; and (d) the adverse employment action occurred under circumstances that give rise to an inference of unlawful discrimination. Id. (citing St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506 (1993)).

If Phillips is able to show a prima facie case of discrimination at step one, the burden of production shifts to SEPTA at step two to "articulate one or more legitimate, non-discriminatory reasons for its employment decision." Id. (citing Waldron v. SL Indus., Inc., 56 F.3d 491, 494 (3d Cir. 1995)).

If SEPTA is able to articulate such a reason, then Phillips, at step three, must then demonstrate that SEPTA's

proffered reasons were merely a pretext for intentional discrimination. Id. (citing McDonnell Douglas, 411 U.S. at 804). While the burden of production shifts, the employee always has the ultimate burden of persuasion to prove intentional discrimination. Id. (citing Jones, 198 F.3d at 410.

1. *Backfill Foreperson Positions*

A backfill foreperson role is a temporary position, wherein an employee is selected to stand-in when a foreperson is on leave. Phillip alleged in his Complaint that SEPTA denied him a backfill opportunity in 2014 because of his national origin, and instead awarded it to his "American-born" co-workers, Lona Haley and Phillip Caltagirone. However, Phillip now concedes that backfill positions are awarded based on seniority, and that Haley and Caltagirone were more senior than Phillip. Pl. Br. 14, ECF No. 21. Thus, Phillip concedes that SEPTA did not discriminate against him regarding the backfill opportunity in 2014. Accordingly, the 2014 backfill opportunity does not establish a discrimination claim.

In Phillip's response to the summary judgment motion, he newly alleges that he was improperly denied a backfill position in 2013 as well. In support of this new allegation,

Phillip offers only his own self-serving affidavit,[4] Pl. Mot. Ex. N, at ¶¶ 15-16, ECF No. 21, which is not enough to create a genuine issue of material fact. For one, generally, "conclusory, self-serving affidavits are insufficient to withstand a motion for summary judgment." Gonzalez v. Sec'y of Dep't of Homeland Sec., 678 F.3d 254, 263 (3d Cir. 2012) (quoting Kirleis v. Dickie, McCamey & Chilcote, P.C., 560 F.3d 156, 161 (3d Cir. 2009)).

In any event, this new, essentially unsupported allegation concerns a separate and distinct event from those alleged in the complaint. Thus, Phillip is attempting to raise an entirely new claim in his response to the motion for summary judgment. A plaintiff is permitted to introduce new facts into the record at the summary judgment stage. See Bell Atl. v. Twombly, 550 U.S. 544, 563 (2007) ("[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint."). However, a plaintiff cannot introduce new legal theories or claims through an opposition to a motion for summary judgment. See myService Force, Inc. v. Am. Home Shield, No. 10-6793, 2013

---

[4] Phillip's affidavit is not a "sham affidavit" because, although it makes claims outside of his prior pleadings and deposition, it does not directly contradict them, at least with regards to the backfill positions. See Jiminez v. All Am. Rathskeller, Inc., 503 F.3d 247, 253 (3d Cir. 2007) ("A sham affidavit is a contradictory affidavit that indicates only that the affiant cannot maintain a consistent story or is willing to offer a statement solely for the purpose of defeating summary judgment.").

10

WL 180287, at *12 (E.D. Pa. Jan. 17, 2013) ("Federal pleading standards do not allow a party 'to raise new claims at the summary judgment stage'") (quoting Dewees v. Haste, 620 F. Supp. 2d 625, 635 n.7 (M.D. Pa. 2009)); see also Bell v. City of Phila., 275 F. App'x 157, 160 (3d Cir. 2008) (non-precedential) ("A plaintiff 'may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment.'") (quoting Shanahan v. City of Chi., 82 F.3d 776, 781 (7th Cir. 1996)). Thus, Phillip's self-serving affidavit is insufficient to create a genuine issue of material fact as to the 2013 backfill position, and, even if it were, the new claim cannot be added here. Accordingly, the alleged discrimination regarding the backfill positions cannot support the discrimination claims.

### 2. *Maintenance Manager Position*

Phillip claims that he was discriminated against based on his race and national origin when he was given an interview, but not hired, for a promotion to maintenance manager. SEPTA does not contest, at least for the purposes of its summary judgment motion, that Phillip has satisfied his burden under McDonnell Douglas step one to establish a prima facie case of discrimination. Accordingly, under McDonnell Douglas step two, SEPTA proffers a legitimate, non-discriminatory reason why it did not promote Phillip to maintenance manager. Namely, SEPTA

contends that Phillip did not perform as well in the interview as two other candidates – one of whom got the job. Accordingly, pursuant to McDonnell Douglas step three, the burden shifts to Phillip to demonstrate that this reason is pretext.

To show pretext, "the non-moving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them 'unworthy of credence.'" Fuentes v. Perskie, 32 F.3d 759, 765 (3d Cir. 1994) (quoting Ezold v. Wolf, Block, Schorr and Solis-Cohen, 983 F.2d 509, 531 (3d Cir. 1992)) (emphasis omitted). In his effort to show pretext, Phillip raises the new allegation in his response to SEPTA's Motion for Summary Judgment that the interview for maintenance manager was "stacked against" him. Pl. Br. 20, ECF No. 21; see also Pl. Mot. Ex. N, at ¶ 25, ECF No. 21.

The selection process for the maintenance manager position was conducted pursuant to SEPTA's policies. First, the vacancy was posted, and nine applicants responded. SEPTA management then narrowed the applicant pool, selecting four applicants to be evaluated by a three-person interview panel. The interview panel was composed of two of Phillip's managers, Jesse Fleck and Rodney Martinez, as well as a third person, Richard Ziegler. The four applicants selected to interview were

Phillip, Matthew Trauger, Eric Jackson, and Robert Hoyle. During the interviews, each candidate was asked the same set of ten weighted questions, which were each scored on a 0-10 point system. The candidates were then ranked based on their scores. Trauger was ranked first, with a total score of 239. Jackson was ranked second, (scoring 210); Phillip was ranked third, (scoring 178); and Hoyle was ranked fourth (scoring 155).

In his response to the Motion for Summary Judgment, Phillip does not contest that the maintenance manager position is awarded to the candidate with the highest interview scores. Rather, the essence of his claim is that Fleck's attitude toward Phillip during the interview was "antagonistic," thereby demonstrating a discriminatory animus.[5] Id. at 19-20. Phillip's discriminatory interview theory fails for two reasons.

First, it was raised for the first time in his brief opposing the instant Motion for Summary Judgment. See Ragland v. Comm'r New Jersey Dep't of Corr., No. 16-3315, 2017 WL 5900556, at *2 (3d Cir. Nov. 30, 2017); see also Kocher v. Larksville Borough, 926 F. Supp. 2d 579, 604 (M.D. Pa.), aff'd, 548 F. App'x 813 (3d Cir. 2013) ("[A] plaintiff may not expand his claims to assert new theories for the first time in response to

---

[5] The only evidence of Fleck's "antagonistic" behavior is Phillip's own self-serving affidavit, attached to his response to the Motion for Summary Judgment.

13

a summary judgment motion") (quoting <u>Desparois v. Perrysburg Exempted Village Sch. Dist.</u>, 455 Fed. App'x 659, 666 (6th Cir. 2012)); <u>Dewees v. Haste</u>, 620 F. Supp. 2d 625, 635 (M.D. Pa. 2009) (explaining that, "to the extent Plaintiff is attempting to expand upon his original allegations through argument in his brief it is impermissible"); <u>Anderson v. Consol-Pennsylvania Coal Co.</u>, 740 F. Supp. 1126, 1130 (W.D. Pa. 1990) ("[W]e will not allow plaintiffs to expand their theory of the case at this late date in an effort to avoid summary judgment.").

Second, Phillip has not presented sufficient evidence to allow a reasonable factfinder to find that that SEPTA's legitimate non-discriminatory reason (poor interview performance) was mere pretext under <u>McDonnell Douglas</u> step three. Poor performance in an interview is recognized as a legitimate non-discriminatory reason for failure to hire or promote. <u>See, e.g.</u>, <u>Carr v. New Jersey</u>, 534 Fed. App'x 149, 152 (3d Cir. 2013); <u>McCann v. Astrue</u>, 293 Fed. App'x 848, 852 (3d Cir. 2008). SEPTA has presented sufficient evidence that, although the interviewers concluded that Phillip was qualified, he was ranked third behind Trauger and Jackson because of his interview performance. <u>See</u> ECF No. 18 at 4 n.3. Phillip has not presented sufficient evidence to rebut SEPTA's contention that Phillip was ranked third in interview performance. Further, the panel had concerns about Plaintiff's reluctance to consider

14

input from his coworkers. Id. Accordingly, the alleged discrimination regarding the maintenance manager position cannot support the discrimination claims.

3.  *Hostile Work Environment*

Phillip's third basis for his discrimination claim is a hostile work environment theory, based on his coworkers' alleged comments and conduct. To state a hostile work environment claim, a plaintiff must show that "1) the employee suffered intentional discrimination [because of his membership in a protected class,] 2) the discrimination was severe or pervasive, 3) the discrimination detrimentally affected the plaintiff, 4) the discrimination would detrimentally affect a reasonable person in like circumstances, and 5) the existence of respondeat superior liability." Mandel v. M & Q Packaging Corp., 706 F.3d 157, 167 (3d Cir. 2013).

To state a hostile work environment claim, "[t]he plaintiff must subjectively perceive the environment to be hostile or abusive, and conditions must be such that a reasonable person would have the same perception." Konstantopoulos v. Westvaco Corp., 112 F.3d 710, 715 (3d Cir. 1997); see also Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 80-81 (1998) (holding Title VII should not be construed as a general civility code); Harris v. Forklift Sys., 510 U.S.

15

17, 21 (1993) (holding that the "mere utterance of an . . . epithet which engenders offensive feelings in an employee . . . does not sufficiently affect the conditions of employment to implicate Title VII") (quoting Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, 67 (1986). Accordingly, "offhand comments, and isolated incidents (unless extremely serious)" are not sufficient toسلسtain a hostile work environment claim. Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998). Rather, the "conduct must be extreme to amount to a change in the terms and conditions of employment." Id.[6]

Phillip has based his hostile work environment claim on approximately six remarks by his co-workers, as well as the contention that, on multiple occasions, his co-workers "put toilet papers on Plaintiff's jaw-box; suggesting that Plaintiff was 'shit." Compl. at 4, ECF No. 1. Of the comments, only three referenced to Phillip's national origin, and none referred to Phillip's race. Specifically, the alleged comments were: (1) "You foreigners come to America, and take away good American jobs"; (2) "Foreigners come here, get welfare, and take money

---

[6] The McDonnell Douglas framework does not apply to a hostile work environment claim because "there is no legitimate justification for [a hostile work] environment, and thus recourse to the McDonnell Douglas test is not warranted." Moody v. Atl. City Bd. of Educ., 870 F.3d 206, 213 n.11 (3d Cir. 2017) (quoting Pollard v. E.I. DuPont de Nemours Co., 213 F.3d 933, 943 (6th Cir. 2000)). In any event, the result here is the same whether or not the McDonnell Douglas steps apply. Phillips fails to state a prima facie case, so even under McDonnell Douglas, his claim would fail under step one.

16

away from the government"; (3) a co-worker calling Phillip an "asshole"; (4) a coworker's statement that "Plaintiff was a nobody when Plaintiff came from, and Plaintiff wants to come to America to be somebody." Id. at ¶¶ 10-17; see also Pl. Dep. 70 ¶¶ 18-19, 86 ¶¶ 7-20, 87 ¶¶ 14-17, 89 ¶¶ 1-12. Phillip alleges that these comments, as well the toilet paper incident, occurred over a four-year period - between 2010 and 2014.

Phillip's evidence fails to establish the second prong of a hostile work environment claim, namely the requirement that the alleged harassment be severe or pervasive. See Clair v. Agusta Aerospace Corp., 592 F. Supp. 2d 812, 822 (E.D. Pa. 2009) (Robreno, J.) ("[F]ive stray remarks by co-workers during the course of a twenty-one month employment do not amount to pervasive and regular discrimination as a matter of law."); see also Pineda v. Phila. Media Holdings LLC, 542 F. Supp. 2d 419, 428-29 (E.D. Pa. 2008) (holding that sporadic comments like "what kind of Puerto Rican are you?" made by plaintiff's co-workers were not "pervasive and regular" for the purpose of a hostile work environment claim); Barbosa v. Tribune Co., No. 01-1262, 2003 WL 22238984, *3 (E.D. Pa. Sept. 25, 2003) (finding that the alleged discrimination was not "pervasive and regular" where plaintiff could only point to seven specific comments during eighteen months of employment). Because Phillip has not

17

established that the alleged harassment was severe or pervasive, he fails to state a prima facie hostile work environment claim.

In sum, Phillip has not carried his burden of showing that SEPTA's legitimate, non-discriminatory reasons for denying him either the 2014 backfill position or the maintenance manager position were pretext, and Phillip cannot add a new claim regarding the 2013 backfill position here. Further, Phillip's hostile work environment theory fails because he has not established that the alleged harassment was severe or pervasive. Accordingly, Phillip's discrimination claim fails under both Title VII and the PHRA.

B. Retaliation

In addition to discrimination, Phillip claims that he was retaliated against in violation of Title VII and the PHRA. Specifically, Phillip claims that SEPTA denied him the backfill opportunity in 2014, as well as the maintenance manager position, because Phillip complained to his supervisors about harassment from his co-workers. To establish a prima facie case of retaliation, a plaintiff must demonstrate that (1) he or she engaged in activity protected by Title VII; (2) he or she suffered an adverse employment action after or contemporaneous with the protected conduct; and (3) there was a causal connection between the participation in the protected activity

and the adverse employment action. Moore v. City of Phila., 461 F.3d 331, 340-41 (3d Cir. 2006).

The Supreme Court has clarified that, as in this case, a plaintiff making a claim of retaliation under Title VII "must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer." Univ. of Tex. Sw. Med. Ctr. v. Nassar, 570 U.S. 338 (2013). The causation requirement for retaliation purposes is different than other Title VII discrimination actions: "Title VII retaliation claims must be proved according to traditional principles of but-for causation . . . [t]his requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." Id. at 338.

Applying this framework here, Phillip has not established that his complaints about his co-workers were a but-for cause for the adverse employment decisions at issue in this case. As discussed previously, Phillip did not receive the 2013 backfill position on the basis of seniority, and he did not receive the maintenance manager position due to his interview performance. Accordingly, there is no but-for causal connection between Phillip's complaints and SEPTA's employment decisions as to Phillip, and Phillip's retaliation claim fails.

## V. CONCLUSION

For the reasons discussed above, both Phillip's claims for discrimination and retaliation fail as a matter of law. Accordingly, the Court will **GRANT** SEPTA's Motion for Summary Judgment as to all claims.

An appropriate order follows.